**\*\*NOT FOR PUBLICATION\*\***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                            :
ROSS MATRAY,                                :
                                            :
                    Plaintiff,              :   **Civil No. 09-5859 (FLW)**
                                            :
        v.                                  :   **AMENDED**
                                            :   **OPINION**
DBF COLLECTION CORP.,                       :
                                            :
                    Defendant.              :
_____:

**WOLFSON, United States District Judge:**

      This Fair Debt Collection Practice Act, 15 U.S.C. § 1692, et seq., ("FDCPA"), suit arises out of Defendant's DBF Collection Corp.'s ("Defendant's" or "DBF's") attempt to collect from Plaintiff Ross Matray ("Plaintiff" or "Matray") past-due rent incurred during a holdover residential tenancy in New York by Plaintiff's former co-tenant. Presently before the Court is Defendant's motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), or, in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). Also before the Court is Plaintiff's motion for summary judgment. The Court elects to treat Defendant's motion as one for summary judgment and, for the following reasons, grants Defendant's motion. Accordingly, the Court denies Plaintiff's motion for summary judgment.

I.    FACTS AND PROCEDURAL HISTORY

      The undisputed facts of this suit are as follows. On or about October 1, 2006, Plaintiff

entered into a residential lease for an apartment in New York, along with his former co-tenant Joshua Rosenstock ("co-tenant" or "Rosenstock"), with Morad Associates, LLC, a landlord ("Morad" or "landlord"). The termination date for the lease was September 30, 2007. A lease renewal was sent to Plaintiff and Rosenstock in August 2007, but neither tenant executed the renewal at that time. Plaintiff moved out of the apartment prior to the termination of the lease.[1]

After Matray moved out, Rosenstock remained in the premises as a holdover tenant.[2] On January 22, 2008, the landlord taped a "THIRTY (30) DAY NOTICE OF TERMINATION" to the residence stating that it was terminating the holdover tenancy. Def. Mot. SJ, Exh. F. Several months later, on March 11, 2008, a Notice of Petition Holdover was served on a subtenant then residing at the premises. Id. at Exh. G-H. This notice was not served on Matray personally, or sent to the address at which he resided at that time. See id. On or about June 3, 2008, the landlord obtained a judgment of possession against Rosenstock and Matray and the City Marshal was directed to take possession of the premises. Id. at Exh. I. This judgment was mailed to Matray at the forwarding address he registered with the post office. Def. SOMF, ¶ 11.

The landlord subsequently hired DBF to collect the past-due rent due under the holdover tenancy. On September 10, 2008, DBF sent a notice of the debt to Matray. Matray responded with a letter stating that he did not acknowledge the debt as his because he had vacated the premises prior to the termination of the September 2006 - 2007 lease. DBF periodically additional letters to Matray,

---

[1] Matray vacated the premises prior to September 30, 2007. Matray Afft. at ¶ 5. Matray also attached a letter exhibit in which he tells Defendant that he informed the landlord that he was moving out prior to the expiration of the tenancy. See Pl. Mot. SJ Moving Br., Exh. B. However, he has not affirmed this assertion (that he notified the landlord he was vacating the premises) by way of an affidavit or certification.

[2] Rosenstock ultimately signed a renewal of the lease on December 12, 2007.

stating first that he owed $18,786.00 on September 10, 2008, then $16,786 on December 4, 2008, $14,286.00 on February 4, 2009, $12,786.00 on February 13, 2009, $11,786.00 on March 10, 2009, and $10,786.00 on April 14, 2009.  Pl. Mot. SJ Moving Br., Exh. A, C, D, E, F, G.  The letters did not explain the basis for the decline in the amount due over time.  In addition, DBF reported the account as past due to Experian Credit Reporting Agency.  Id. at Exh. K.

Following the letters of declining amounts, on August 24, 2009, DBF sent a "FINAL NOTICE" to Plaintiff stating that

> . . . UNLESS THIS ACCOUNT IS PAID IN FULL WITHIN 30 DAYS, THIS MATTER WILL BE REFERRED TO OUR ATTORNEYS.
>
> IN THE EVENT SUIT BECOMES NECESSARY, YOU MAY ALSO BE HELD LIABLE FOR LEGAL FEES, COURT COSTS, INTEREST AND SHERIFF'S FEES.
>
> WE URGE YOU CONTACT THIS OFFICE AT ONCE ....

Pl. Mot. SJ Moving Br., Exh. H.

Plaintiff then filed the instant suit asserting several violations of the FDCPA.  Plaintiff made written discovery demands, including a Request for Admissions, before Defendant answered and before the Joint Discovery Plan was completed.  After that plan was completed, Plaintiff agreed to reissue the written discovery demands, though it appears that Plaintiff did not do so.[3]  Thereafter,

---

[3] Plaintiff argues that Defendant admitted some facts by failing to timely respond to Plaintiff's request for admissions dated February 15, 2010. See Pl. Mot. SJ Moving Brief at 4 n.1-2; Plaintiff's Interrog., et al., Exh. L to Brief (dated Feb. 9, 2010).  Those requests, however, were made prior to the discovery period, which did not commence until after the initial conference held on March 5, 2010.  Moreover, in the Joint Discovery Plan dated April 19, 2010, Plaintiff agreed to "re-serve the Defendant with discovery requests after the initial conference [including] requests for admission ....."  Docket Entry No. 9 at ¶¶ 3A, 4A.  Thus, the Court will not recite here, or base its decision upon, facts Plaintiff argues are admitted based on Defendant's failure to respond to the February 15, 2010 service of the Request for Admissions.

Defendant moved to dismiss or, in the alternative, for summary judgment. For the reasons explained herein, the Court elects to treat the motion as one for summary judgment.[4] On the same date, Plaintiff also moved for summary judgment. The Court now rules on both parties' motions.

II.   SUMMARY JUDGMENT

As noted, Defendant has moved to dismiss or, in the alternative, for summary judgment, and Plaintiff has also moved for summary judgment. Because discovery has been completed, and both parties have moved for summary judgment, attaching pertinent documents for the Court to review, the Court will treat Defendant's motion solely as one for summary judgment. Accordingly, the following summary judgment standard of review applies to both parties' motions.

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n. 1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56(c). For an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio

---

[4]   Plaintiff queries whether Defendant's motion is for partial summary judgment because Defendant did not raise specific challenges to each of the asserted FDCPA violations. However, reading Defendant's papers in context, the Court interprets Defendant's argument to be that each of Plaintiff's asserted violations are improperly premised on Plaintiff's challenge to the validity of the debt. Accordingly, the Court does not view Defendant's motion as one for partial summary judgment, as opposed to judgment on all counts.

Corp., 475 U.S. 574, 587 (1986); Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002). For a fact to be material, it must have the ability to "affect the outcome of the suit under governing law." Kaucher, 455 F.3d at 423. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.; Monroe v. Beard, 536 F.3d 198, 206-07 (3d Cir. 2008). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts." Id. at 206 (quoting Matsushita, 475 U.S. at 586). Moreover, the non-moving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial." Woloszyn v. County of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005). Indeed, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322.

Moreover, in deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. The nonmoving party cannot defeat summary judgment simply by asserting that certain evidence submitted by the moving party is not credible.

S.E.C. v. Antar, 44 Fed.Appx. 548, 554 (3d Cir. 2002).

III.     DISCUSSION

Before the Court can address Plaintiff's substantive claims in the Complaint, the Court must first address the underlying state law issue. Since Plaintiff's FDCPA claims largely depend on his assertion that he is not liable for unpaid rent to the Landlord, a conclusion which Defendant contests, the Court must determine if one tenant can be held liable for the unpaid rent incurred by his co-tenant during the holdover period under New York law.

    A.     Plaintiff's Status as a Debtor under New York Law

At the outset, the Court addresses the implication in Defendant's papers that the judgment of possession determined Plaintiff's liability for the debt. Under New York law, a judgment of possession is obtained via a summary proceeding. See N.Y. Real Property Actions and Proceedings Law § 747 (2008). Once such a judgment is entered, a party who has been ejected is not barred by res judicata from bringing a subsequent action (within 60 days of the judgment) to determine issues of title. Haque v. Rob, 920 N.Y.S.2d 707, 707 (App. Div. 2011). Thus, a judgment of possession does not appear to be a full judgment on the merits. More to the point, that a judgment of possession was entered does not necessarily implicate *Matray's* liability for the holdover tenancy rent amount. At the time judgment was entered, the landlord proceeded in the possession proceeding as if Matray was still residing in the premises and served Notice of Petition Holdover on Matray only by taping it on the door of the residence. Since Matray was not living there at the time of the notice, there is a question whether service was properly effected. Accordingly, I decline to rely on the judgment of possession alone as a basis for finding that Matray could be held liable for the past-due holdover rent. I look, instead, to New York law to determine whether a co-tenant who has vacated the

6

property prior to the holdover period may be held liable for the unpaid rent.

Under New York law, once a lease expires, if a tenant continues to occupy the premise, the landlord "may proceed, in any manner permitted by law, to remove the tenant, or, if the landlord shall accept rent for any period subsequent to the expiration of such term, then, unless an agreement either express or implied is made providing otherwise, the tenancy created by the acceptance of such rent shall be a tenancy from month to month commencing on the first day after the expiration of such term." N.Y. Real Property Law § 232-c. Plaintiff in this case does not dispute that rent is due to the Landlord for his co-tenant's holdover after the lease expired. The issue, instead, is whether a person who entered into a lease with a co-tenant, under which he is jointly and severally liable for rents due, can be held liable for unpaid rent when he has vacated the leased premise once the lease expired, albeit without informing the landlord of his departure, while his co-tenant heldover on the premises.

The Court's careful search of New York law does not reveal a case that directly addresses this issue. "When a state's highest court has yet to speak on a particular issue, it becomes the role of the federal court to predict how the state's highest court would decide the issue were it confronted with the problem." Jaworowski v. Ciasulli, 490 F.3d 331, 333 (3d Cir. 2007) (citing Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1046 (3d Cir. 1993)) (internal citation marks and alterations omitted). In predicting how the New York highest court would rule, I am to "give careful consideration to decisions of [New York's] intermediate appellate courts ...." Id. (internal citations omitted).

Although there is no case directly addressing whether a co-tenant who vacated the premises is jointly liable for rent during a holdover tenancy, it is clear that a holdover tenancy implies "a continuance of the tenancy on the same terms and subject to the same covenants as those contained

7

in the original instrument." Bush v. Mechanicville Warehouse Corp., 912 N.Y.S.2d 768, 770 (App. Div. 2010) (quoting City of New York v. Penn. R.R. Co., 3 N.Y.2d 298, 300 (N.Y. 1975)). "While this common law rule has been modified by [§ 232-c], which relates principally to the term or duration of the holdover tenancy, it continues to remain valid with respect to provisions other than duration." Tubbs v. Hendrickson, 390 N.Y.S.2d 791, 793 (Sup. Ct. 1976). However, "the parties are free to prove a changed condition of affairs which would naturally or of necessity operate to modify the relations existing between the parties." Id. "But in the absence of any proof upon the subject there can be no reason for holding that the relations of the parties have changed." Id. (citation omitted). That New York's common law rule incorporates the "same terms" as the original instrument into the holdover tenancy suggests that the joint tenancy found in the original instrument would likewise be found in the holdover tenancy.

Unfortunately, the cases cited by the parties do not directly answer the present question either. Plaintiff relies on two cases, Foster v. Stewart, 188 N.Y.S. 151 (App. Div. 1921) and Sutton v. Regina Metro. Co., 2005 N.Y. Slip. Op. 50899 (App. Div. Jun. 13, 2005) (unpublished), to support his contention that he should not be held liable. Foster, however, dealt with the renewal of a lease, not a holdover. And, in Sutton, the defendant provided express notice to the landlord of his intent to vacate, which notice the Sutton court relied upon in reaching its holding that defendant was not liable for holdover rent of his co-tenant. There is no evidence here that Matray similarly notified the landlord that he was vacating the premises.[5]

---

[5] While there is reference to such "notice" in Matray's letter to Defendant, dated September 18, 2008, Matray does not attach a copy of any written notice given to the landlord. If the notice was oral, there is no certification to that effect. The Court may rely only upon sworn affidavits, certifications, or declarations as evidence to be considered on a motion for summary judgment. See Byrne v. Monmouth County Dept. of Health Care Facilities, 372 Fed.Appx. 232, 233

8

Defendant cites to 88th Street Realty, L.P. v. Maher, 867 N.Y.S.2d 859 (Civ.Ct. 2008) and Stahl Associates Co. v. Mapes, 490 N.Y.S.2d 12 (App. Div. 1985). Stahl is distinguishable because that case involved subtenant liability. 88th Street, however, while not directly on point, provides some guidance.[6] That case involved a premises leased to one tenant through September 15, 2007. The tenant allowed his girlfriend to reside with him at the premises. After their relationship soured, he vacated the premises prior to the expiration of the lease term. His girlfriend heldover on the premises and failed to pay rent. The landlord brought suit against the tenant, on December 21, 2007, for the holdover period. While the court expressed its displeasure about the landlord's delay in bringing suit, it ruled in favor of the landlord, "award[ing the landlord] a money judgment against [the vacating tenant] on January 2, 2008, representing three and a half months' use and occupancy after he vacated the premises." Id. at 862.[7] 88th Street is factually distinct in that it involved only one tenant of record and a roomate, not of record, as opposed to two co-tenants of record. Nonetheless, that the court held the tenant responsible for the first few months of the holdover period suggests that New York courts would likewise hold a co-tenant liable in that circumstance.

For further guidance, and in the absence of New York case law directly on point, the Court

---

(3d Cir. 2010) (unsworn certification may not be relied upon to grant summary judgment). Moreover, the Court may not rely upon Matray's statement in the September 18, 2008 letter that he notified the landlord because that statement is hearsay.

[6] The Court acknowledges that this decision is not an appellate decision; however, the Court treats its analysis as persuasive authority.

[7] On account of the landlord's failure to mitigate damages, the court did not award rent for the timeframe from January 2, 2008 until the date the girlfriend was evicted from the premises. This aspect of the court's holding has been called into question by subsequent precedent, which clarifies that a residential landlord does not have a duty to mitigate damages or relet abandoned premises. Hamblin v. Bachman, 885 N.Y.S.2d 711 at *3-4 (Civ. Ct. 2009) (unreported).

looks to other jurisdictions that have analyzed this particular issue. The Texas Supreme Court, for example, has expressly held that a tenant cannot be held liable for unpaid rent incurred by his co-tenant's holding-over if the tenant vacates the premise upon the termination of the original lease. Bockelmann v. Marynick, 788 S.W.2d. 569, 571-72 (Tex. 1990). In so holding, the Bockelmann Court relied on Texas law that a holdover tenancy is a new tenancy rather than an extension or renewal of the original lease. Id. That court reasoned that since the holdover tenancy is a new tenancy: (1) there was no basis from which to presume a joint holding-over; and (2) under well-established common law, tenants cannot bind non-consenting co-tenants to a renewal unilaterally. Id. at 572. The Bockelmann court expressly overruled the lower court, which held that, absent the tenant's notification to the landlord of his departure, the tenant is liable for the co-tenant's holdover. Marynick v. Bockelmann, 773 S.W.2d 665, 669 (Tex. App. 1989) ("As long as one tenant remains in possession, it would appear to the landlord that the situation had not changed, that the premises were not vacant and available for lease.").[8]

A Kentucky court, however, came to the opposite conclusion under similar facts, and held that a tenant is liable for a co-tenant's holdover even if the tenant is not in possession of the leased premise during the holdover period. Caudill v. Acton, 175 S.W. 3d 617, 619 (Ky. App. Ct. 2004).

---

[8] On the issue of whether a "new" lease is created, the Court notes that one New York treatise states that "[w]hen a landlord has exercised his or her option to terminate the lease, the term is at an end. If, however, the tenant continues in possession with the acquiescence of the landlord, this will not reinstate the original term but will create a new tenancy which in turn must be terminated before the tenant can be treated as a trespasser or as holding over after the expiration of his or her term." NEW YORK JURISPRUDENCE, 74A N.Y. Jur. 2d Landlord and Tenant § 883 (2d ed.). However, the treatise cites to two cases from 1916 and 1920 to support this proposition, both of which were decided prior to the enactment of N.Y. Real Property Law § 232-c in 1959. Given the holdings of Tubbs, Penn R.R., and more recent case law, the Court does not find the treatise's reliance on the 1916 and 1920 cases persuasive.

In so holding, the Caudill court appears to go even further than the lower court in Bockelmann, stating that the intention of the tenant not to occupy the premise is immaterial.[9] Id. As long as a co-tenant is in possession, the other tenant has the right to take possession, regardless of whether she exercises that right. Id. Kentucky law appears to treat a holdover tenancy as a continuation of the original tenancy, and that tenancy is not terminated until the premises are vacated. Id. at 620.

In predicting how New York courts would rule on this issue, the Court is mindful of the differences in Texas and Kentucky landlord-tenant law. Whereas Texas views a holdover tenancy as a new tenancy created after the expiration of the original tenancy, Kentucky views it as a continuation of the original tenancy. As noted above, New York appears to treat a holdover tenancy as a continuance as well. Furthermore, the Court finds persuasive the reasoning found in the Bockelmann lower court's opinion, that absent notice from the departing tenant, a landlord would have no way of knowing that the tenant has vacated the premises upon the expiration of the lease. This is very similar to the holding in Tubbs, that without proof that the relationship between the parties has changed, there is no reason to treat the holdover tenancy as different than the original tenancy. Based on these considerations, the Court predicts that New York courts would hold, absent proof of the landlord's knowledge of the tenant's intent to vacate, a tenant will continue to be accountable for any liabilities incurred by a co-tenant during holdover, even if the tenant vacates the premise upon the termination of the original lease.

Applying the Court's findings of New York law, Plaintiff would be liable for his co-tenant's

---

[9] The Caudill case differs from the present case and Bockelmann in that the tenant being sued for the co-tenant's holdover never took possession of the premises at all. However, the tenant in that case was the daughter of the co-tenant, and she was the one who paid rent throughout the tenancy, both during the original lease period and the holdover. Plaintiff in that case was suing for both back rent and damages discovered after the father vacated the premise.

unpaid rent during holdover. There is no dispute by Plaintiff that he entered into a joint lease with his co-tenant, therefore under the original lease, he is jointly and severally liable for any rent incurred. While Plaintiff asserts that he vacated the premises upon or before the expiration of the lease, he does not assert that he notified his landlord of his intent to vacate; indeed, Plaintiff submits no proof or documentation that he informed the landlord of his departure. Without proof that the landlord knew that he was no longer in possession of the premise when the lease expired, Plaintiff would continue to be liable for any rent incurred during any holdover period caused by his co-tenant. Therefore, subject to proper evidence by Defendant to substantiate the unpaid rent, Plaintiff is a debtor based on the facts of this case.[10]

    B.    FDCPA Claims

Because a co-tenant may be held liable under New York law for the holdover tenancy period, Plaintiff's FDCPA claim premised on Defendant's assertion of this debt is not actionable. Several of Plaintiff's FDCPA claims[11], however, are not related to the validity of the debt. To those claims, I now turn.

The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against

---

[10] Plaintiff offers evidence that his co-tenant signed a renewal of the original lease on December 12, 2007 on his own. Pl. Opp. to Def. SJ, Exh. J. However, this does not absolve Plaintiff of his liabilities during the holdover period between Oct. 1, 2007, when the original lease expired, and December 12, 2007, when the new lease was signed.

[11] In referring to Plaintiff as bringing several "claims," I am cognizant that a violation of the FDCPA may be demonstrated through violation of one or more specific subsections of the statute. I refer to Plaintiff's arguments under each subsection as a separate claim simply for ease of reference.

debt collection abuses." 15 U.SC. § 1692(e). Specifically, the FDCPA prohibits the use of any conduct the natural consequences of which is to harass, oppress, or abuse any person, 15 U.S.C. § 1692d, any false, deceptive, or misleading representations or means, 15 U.S.C. § 1692e, and any unfair or unconscionable means, 15 U.S.C. § 1692f, to collect or attempt to collect any debt. The FDCPA creates a private cause of action against debt collectors who violate its provisions. Brown v. Card Service Center, 464 F.3d 450, 453 (3d Cir. 2006) (15 U.S.C. § 1692k).

In determining whether a communication from a debt collector violates the FDCPA, a court must analyze the debt collector's statements from the perspective of the "least sophisticated debtor," id. at 454; Campuzano-Burgos v. Midland Credit Mgmt., 550 F.3d 294, 301 (3d Cir. 2008), in order to protect "all consumers, the gullible as well as the shrewd." Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir. 2008) (quoting Brown, 464 F.3d at 454). Although the "least sophisticated consumer" standard is a low standard, it nonetheless " 'prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." Rosenau, 539 F.3d at 221 (quoting Wilson v. Quadramed Corp., 225 F.3d 350, 355 (3d Cir. 2000)).

Moreover, "[t]he FDCPA is a strict liability statute to the extent it imposes liability without proof of an intentional violation." Allen ex rel. Martin v. LaSalle Bank, N.A., 629 F.3d 364, 368 (3d Cir. 2011).  Here, the parties agree that Defendant is a debt collector and that Plaintiff is a consumer-debtor, therefore, the FDCPA applies.  Keeping in mind these standards, I now address each of the specific claims Plaintiff brings.

    1.    *Section 1692e*

Section 1692e, generally prohibits the use of false or misleading representations: "A debt

collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." That section lists several specific examples of such false or misleading representations, including ". . . (2) [t]he false representation of—(A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt," 15 U.S.C. § 1692e(5), and "[t]he threat to take any action that cannot legally be taken *or that is not intended to be taken*." 15 U.S.C. § 1692e(5) (emphasis added).

      a.     Threat to Take Legal Action

Under section 1692e(5), Plaintiff asserts a claim based on Defendant's threat to institute litigation that it did not intend to pursue. Defendant does not dispute that the August 24, 2009 letter contained a threat to sue.[12] The letter states: "UNLESS THIS ACCOUNT IS PAID IN FULL WITHIN 30 DAYS, THIS MATTER WILL BE REFERRED TO OUR ATTORNEYS." Thereafter, the letter states, "IN THE EVENT SUIT BECOMES NECESSARY, YOU MAY ALSO BE HELD LIABLE FOR LEGAL FEES, COURT COSTS, INTEREST AND SHERIFF'S FEES. WE URGE YOU CONTACT THIS OFFICE AT ONCE." Indeed, this sort of language was held to constitute a "threat" in Crossley v. Lieberman, 868 F.2d 566, 567 (3d Cir. 1989). In that case, an attorney mailed a letter to a debtor stating: "Unless I receive payment in full within one week from the date of this letter, I will be compelled to proceed with suit against you." Id. at 567. In the court's view,

---

[12] "Whether a debt collector's communications threaten litigation in a manner that violates the FDCPA depends on the language of the letter, which should be analyzed from the perspective of the least sophisticated debtor." Huertas v. Galaxy Asset Mgmt., --- F.3d ----, 2011 WL 1361568 at *3 (3d Cir. 2011) (quoting Brown v. Card Serv. Ctr., 464 F.3d 450, 453 (3d Cir. 2006)). Here, the least sophisticated debtor would clearly read the letter's plain language to indicate that a suit may be brought against him.

this language "clearly implies that legal action will commence if payment is not received within a week [and] obviously was meant to frighten [the debtor] into paying her debt ...." Id. at 571.

That the letter included a threat, however, does not end the inquiry. Under section 1692(e)(5), a threat is actionable only if it encompasses "action that . . . is not intended to be taken." Plaintiff's only proof that Defendant did not intend to take action is that Defendant did not actually file suit within 30 days as the letter threatened. This assertion, however, does not speak to whether Defendant intended to file suit at the time that the statement was made. While such an assertion may be sufficient at the pleading stage, see Brown, 464 F.3d at 455 (holding allegations that debt collector "never intended to file a suit" sufficient to withstand a motion to dismiss), the Plaintiff bears the burden of substantiating such a contention with proof in order to withstand summary judgment. Id. ("If [Plaintiff] can *prove, after discovery* that [Defendant] seldom litigated or referred debts such as [Plaintiff's] . . . to an attorney, a jury could conclude that the [the] Letter was deceptive or misleading vis-à-vis the least sophisticated debtor.") (emphasis added).[13] Without any proof of Defendant's lack of intent, Plaintiff's claim under section 1692(e)(5) fails as a matter of law and Defendant is granted summary judgment on this claim. Plaintiff's motion for summary judgment on this claim is denied.

      b.     <u>Amount of Debt</u>

Plaintiff argues that Defendant violated section 1692e(2), which permits a claim against a debt collector that falsely represents the character, amount, or legal status of a debt. Specifically, Plaintiff argues, Defendant misrepresented the amount of the debt by sending letters with

---

[13] Rather than holding the letter in that case threatening, the <u>Brown</u> Court addressed whether it met the lesser standard of being deceptive or misleading. Even so, its analysis of the "never intended to file suit" language is instructive here.

progressively decreasing amounts.[13] In Plaintiff's view, this was confusing because the amounts fluctuated without Plaintiff having made any payments. The letters did not provide any explanation of how or why the amount changed. Plaintiff relies, principally, on Pickard v. Lerch, No. 1:03CV1688, 2005 WL 1259629 (S.D.Ind. May 26, 2005), for the proposition that a debt collector violates section 1692e(2) when it demands an amount less than what it is actually owed. Defendant retorts that the reason why the amount decreased over time is that the co-tenant who held over was making payments toward the debt. See Def. Reply SOMF, ¶ 20; Friedman Cert., ¶ 15. Defendant makes no further argument regarding liability under section 1692e(2). Neither party cites Third Circuit case law on this issue.

Prichard, indeed, held that a debt collector violates section 1692e(2) when it demands an amount less than what it is actually owed. In Prichard, the debt collector sent a letter stating that the debtor owed "$1,329.83 [in] principal and interest as of the exact date of this letter." Id. at *1. Thereafter, the debt collector sent a Statement of Account identifying the debt as $1,323.49 in principal, and $391.47 in interest, for a total of "$1,714.96 in principal and interest as of January 9, 2003." Id. After sending these letters to the plaintiff-debtor, the debt collector filed a claim against the debtor in small claims court. The debt collector relied on the second letter, which stated $1,329.83 "plus interest and costs" as the amount due, in support of the small claims court claim. Id. Based on the debt collector's reliance on the second letter in the small claims court action, the plaintiff argued that the first letter misrepresented the amount of the debt in violation of section

---

[13] Plaintiff's other arguments under section 1692e(2), that Defendant misrepresented the status of the debt and the character of debt, were premised on Plaintiff's argument that he was not liable for the holdover tenancy debt. In light of the Court's ruling that Plaintiff is liable, the Court does not address these arguments.

1692e(2). Agreeing with the plaintiff-debtor, Prichard held the initial letter's misstatement of the total amount due to constitute a false representation of the amount of the debt in violation of section 1692e.

Here, unlike in Prichard, Plaintiff does not assert that the decreasing amounts stated in the letters were actually false. Rather, his argument is that the letters were misleading because the amount due decreased periodically without explanation.[14] That there was no explanation for the decreasing amounts is irrelevant—for a statement to be a "false representation" of the amount due the amount stated must be incorrect. See Rosenau, 539 F.3d at 223 ("[T]he issue [for § 1692e claims] . . . is whether under the least sophisticated debtor standard, [the debt collector's] letter . . . can be reasonably read to have two different meanings, *one of which is inaccurate*.") (emphasis added) (internal quotation marks omitted). As suggested by the Friedman Certification, the reason for the decreasing amounts was that Plaintiff's former co-tenant was paying down the debt. See Friedman Cert., ¶ 15 ("Matray's debt is still outstanding today, although it is being paid off by Rosenstock."). Moreover, Plaintiff actually acknowledges in his complaint that "Defendant . . . learned the identity of the correct debtor, owing the past due rent . . .[and] collected approximately $6,000 in payments for the past due rent ...." Compl., ¶ 17. Not only, then, does Plaintiff fail to adduce any evidence to demonstrate that Defendant misrepresented the amount due, Plaintiff apparently realized the reason why the amounts stated in the several letters periodically decreased. Accordingly, Plaintiff is not entitled to summary judgment on his section 1692e(2) claim, and

---

[14] In his moving papers for his summary judgment motion, Plaintiff argues "Defendant persisted in sending written correspondence to Plaintiff reflecting various amounts owed. These amounts fluctuated despite Plaintiff having made no payment, as this was not Plaintiff's debt." Pl. Mot. SJ Open. Br. at 7.

Defendant's motion for summary judgment is granted.

  2. *Section 1692g*

Plaintiff seeks summary judgment on his claim under section 1692g(a), which obligates a debt collector to send the debtor a written validation notice within 5 days of the debt collector's initial communication with the debtor.[15] Plaintiff, further, asserts a claim under section 1692d for "failing to send a letter within five days following its initial contact with Plaintiff setting forth her [sic] rights to seek verification and/or dispute the debt." Pl. Opp. Def. Mot. SJ at 7. For the factual basis for this claim, however, Plaintiff's relies on Defendant's failure to answer his Request for

---

[15] Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing--

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a).

Admissions. As noted, and for the reasons explained *supra*, the Court will not rely upon these facts in support of its ruling. Accordingly, Plaintiff's motion for summary judgment based on a violation of section 1692g(a) is denied. As Plaintiff has not submitted any further evidence in support of this claim, Defendant's motion for summary judgment on this claim is granted.

      3.    *Section 1692d*

For similar reasons, Plaintiff's motion for summary judgment under section 1692d is also denied. This claim was primarily premised on the validity of Plaintiff's debt. Plaintiff's only remaining argument is based on Defendant's failure to mail the written validation required by section 1692g(a). As noted, this claims fails for lack of proof. Accordingly, Plaintiff's motion for summary judgment is denied and Defendant's motion for summary judgment is granted with respect to this claim.

      4    *Section 1692f*

Under section 1692f, a debt collector is forbidden from using unfair or unconscionable means to collect a debt. See Huertas v. Galaxy Asset Mgmt, --- F.3d ----, 2011 WL 1361568 at *2 (3d Cir. 2011). Section 1692f(1), specifically, forbids collection of a debt that "was not expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). In light of the Court's ruling regarding the debt's validity under New York law, Plaintiff's claim based upon section 1692f(1) necessarily fails. Moreover, section 1692f(1) claims must assert that the *amount* sought by the debt collector is not permitted by law, and Plaintiff has not substantiated such an assertion here. Accord Chulsky v. Hudson Law Offices, P.C., – F.Supp.2d –, 2011 WL 1099003 at *7 (D.N.J., Mar. 23, 2011). Finally, while a plaintiff may assert a claim under section 1692 generally, apart from that available under 1692f(1), Plaintiff has not pointed to any specific violation

under section 1692f that is not premised on the validity of the underlying debt. Accordingly, Plaintiff's motion for summary judgment under 1692f is denied and summary judgment is granted to Defendant.

IV.	CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted and Plaintiff's motion for summary judgment is denied. With each of Plaintiff's claims having been resolved on summary judgment, this case is closed.


Dated: June 13, 2011                                             /s/ Freda Wolfson                          
                                                                 Honorable Freda L. Wolfson
                                                                 United States District Judge